NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-3296

STEVEN G. COKER,

Petitioner,

v.

DEPARTMENT OF COMMERCE,

Respondent.

Peter H. Noone, Avery Dooley Post & Avery, LLP, of Belmont, Massachusetts, for petitioner.

Robert E. Chandler, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With him on the brief were Jeanne E. Davidson, Director, and Brian M. Simkin, Assistant Director.

Appealed from: Merit Systems Protection Board

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-3296

STEVEN G. COKER,

Petitioner,

v.

DEPARTMENT OF COMMERCE,

Respondent.

Petition for review of the Merit Systems Protection Board in DA0752070282-C-1.

_____

DECIDED: May 11, 2009

_____

Before MAYER, BRYSON, and PROST, Circuit Judges.

PER CURIAM.

## DECISION

Steven G. Coker challenges the decision of the Merit Systems Protection Board denying his petition for enforcement of a settlement agreement with the Department of Commerce. We affirm.

## BACKGROUND

Mr. Coker worked as a criminal investigator with the National Oceanic and Atmospheric Administration, an agency within the Department of Commerce. On

February 22, 2007, the agency issued a notice removing him from his position for failing to provide accurate time and attendance information on official documents. Mr. Coker filed an appeal with the Merit Systems Protection Board challenging his removal.

Mr. Coker and the agency then entered into a settlement agreement in which the agency agreed to rescind the initial removal action and to replace it with an action removing him for failure to satisfy the medical requirements of his position. Mr. Coker agreed to submit medical documentation demonstrating his inability to meet those requirements. As part of the agreement, the agency was required to reinstate Mr. Coker's sick leave balance in the amount of 1,399 hours and to approve his use of sick leave retroactively from March 2, 2007, to the effective date of his removal. The settlement agreement included a release in which Mr. Coker agreed to:

> [w]aive, release and forever discharge the Agency . . . from any claims, demands, or causes of action, which the Appellant has or may have, arising from his MSPB appeal or from his employment with the Agency. This release includes but is not limited to a release of any right to administrative, judicial or congressional relief, or any other type of relief, or of any claim to back pay, attorney's fees and costs, or other type of compensation, except what is specifically set forth in paragraph 3 [pertaining to the rescission of the initial removal, issuance of the new removal for failure to meet the medical requirements, and reinstatement of Mr. Coker's sick leave balance].

The settlement agreement also contained an integration clause:

> TOTALITY OF AGREEMENT. This Settlement Agreement constitutes the entire agreement between the parties and represents full and final resolution of all aspects of the claims which Appellant may have against the Agency arising out of his appeal to the MSPB, as cited above, or his employment with the Agency. No other conditions or assurances, expressed or implied, are included.

On June 29, 2007, the Board approved the settlement agreement and dismissed Mr. Coker's case, while retaining jurisdiction to ensure compliance with the agreement.

In accordance with the settlement agreement, the agency retroactively reinstated Mr. Coker and placed him on paid sick leave for the period from March 2, 2007, through September 2, 2007, when he was removed for failure to meet the medical requirements of his position because of hearing loss. Mr. Coker's sick leave payments did not include Law Enforcement Availability Pay ("LEAP"), a type of premium pay provided to federal criminal investigators who are required to work, or be available to work, substantial amounts of unscheduled duty beyond their 40-hour work week. See 5 U.S.C. § 5545a. The agency explained that it had canceled Mr. Coker's certification for eligibility for availability pay on the ground that his medical condition prevented him from performing unscheduled duty during the period in question. See 5 C.F.R. § 550.184(d).

On August 31, 2007, Mr. Coker filed a petition for enforcement of the settlement agreement. He contended that the agency's decision not to include availability pay as part of his compensation for his hours of approved sick leave breached the agreement. The administrative judge assigned to the enforcement action concluded that the settlement agreement did not obligate the agency to provide availability pay to Mr. Coker. The administrative judge therefore issued a decision denying the petition for enforcement. After the full Board denied Mr. Coker's petition for review, he filed a petition for review by this court.

DISCUSSION

The Law Enforcement Availability Pay Act ("LEAP Act") provides that a criminal investigator who is eligible to receive availability pay shall receive such pay while on approved sick leave or annual leave. 5 U.S.C. § 5545a(f)(1)(B). The administrative judge explained that because the settlement agreement "was silent regarding LEAP,"

Mr. Coker was not entitled to availability pay. Mr. Coker contends that the LEAP Act was "expressly incorporated into the agreement as a matter of law," and that the agency was therefore required to provide availability pay for the period in which he was on approved sick leave status pursuant to the agreement. That argument is unpersuasive for several reasons.

To begin with, the right to receive availability pay was not "expressly" incorporated into the settlement agreement. As the administrative judge made clear, no portion of the agreement addressed the issue of availability pay. Moreover, the settlement agreement contained an integration clause that clarified that no other express or implied assurances were included in the agreement. We therefore discern no error in the administrative judge's conclusion that the settlement agreement did not expressly incorporate the right to receive availability pay.

Mr. Coker argues that he was automatically entitled to availability pay incident to the agency's obligation to pay him for his sick leave. But in the settlement agreement Mr. Coker explicitly waived his right to "any . . . type of compensation, except what is specifically set forth in paragraph 3." Availability pay is a type of compensation, and paragraph 3 of the settlement agreement did not specifically provide for such compensation. Mr. Coker therefore waived any right he might otherwise have had to seek availability pay under the LEAP Act.

Mr. Coker claims that on other occasions he had received availability pay while he was on approved administrative leave or sick leave. For that reason, Mr. Coker argues that his entitlement to availability pay was implicit in the settlement agreement based on his course of dealing with the agency. Even assuming that, as Mr. Coker

alleges, he had previously received availability pay while he was on sick leave, his course-of-dealing argument is without merit. Evidence of the parties' course of dealing constitutes parol evidence that is typically not relevant to the interpretation of a contract unless that contract is ambiguous. United States v. Ford Motor Co., 463 F.3d 1267, 1278 (Fed. Cir. 2006); Barron Bancshares, Inc. v. United States, 366 F.3d 1360, 1735-36 (Fed. Cir. 2004). Because the settlement agreement made no reference to availability pay and expressly released the agency from any claims for compensation beyond that specifically referenced in the agreement, the terms of the settlement agreement were unambiguous, and Mr. Coker cannot rely on course-of-dealing evidence to supplement those terms.

Mr. Coker argues that the settlement agreement is voidable because he and the agency "had reasonable and differing interpretations of an essential term of the agreement." Specifically, Mr. Coker asserts that he is entitled to avoid the agreement because of his misunderstanding of the sick leave provision, which he interpreted as obligating the agency to provide him availability pay as part of that approved sick leave. Because Mr. Coker alleges a misunderstanding, the failure of the parties to attach a common meaning to a material term would render the contract void, and not, as Mr. Coker asserts, voidable at his discretion. See Restatement (Second) of Contracts § 20 (1981). In any event, there is no cause for rescission here because Mr. Coker's interpretation of the settlement agreement is not a reasonable one; the agreement clearly foreclosed any claim by Mr. Coker to compensation beyond the restoration of his sick leave. See id. at §§ 20, 201; 2 E. Allan Farnsworth, Farnsworth on Contracts § 7.9, at 285 (3d ed. 2004) (standard of reasonableness applies when parties attach different

meanings to contract language). Mr. Coker asserts that he interpreted the agency's agreement to "rescind" his initial removal as a promise to restore the status quo ante—including his eligibility to receive availability pay. But the agency never agreed to restore Mr. Coker to his prior position; instead, the settlement agreement provided that Mr. Coker would still be removed from his position, albeit on medical grounds, and that he waived any right to compensation that he would otherwise have been entitled to (other than that specifically provided for in paragraph 3 of the agreement). Thus, Mr. Coker's belief that the rescission of his initial removal would entitle him to availability pay was not a reasonable one.

Moreover, as the administrative judge observed, "because LEAP is an active-duty benefit that compensates an employee's availability to perform unscheduled duty, it is probable that the appellant, who is physically unable to perform his position, was never intended to receive LEAP while waiting for his removal to be finalized." Mr. Coker disputes that he was physically unable to perform the duties of his position at the time the settlement agreement was executed, because the Office of Personnel Management did not issue its notice finding Mr. Coker to be disabled until February 8, 2008. However, Mr. Coker agreed to be removed from the agency on the ground that he was unable to meet the medical requirements of his position. Substantial evidence therefore supports the administrative judge's conclusion that the agency did not intend to provide availability pay to Mr. Coker while he was waiting for his removal on medical grounds to be finalized.

The regulations governing availability pay provide that an agency may cancel an availability pay certification based on a finding that an investigator "is unable to perform

unscheduled duty for an extended period due to physical or health reasons." 5 C.F.R. § 550.184(d). When the agency retroactively reinstated Mr. Coker, it canceled his certification on the ground that his medical condition—which Mr. Coker himself attested to, and which formed the basis for his removal from his position—rendered him unable to perform unscheduled duty. The cancellation action was in accordance with 5 C.F.R. § 550.184(d) and did not conflict with any provision of the settlement agreement. Because Mr. Coker did not satisfy the requirements for availability pay established by law, the agency was free to cancel his certification for failure to meet those requirements regardless of whether or not availability pay would normally be paid during an employee's sick leave.

For these reasons, we agree with the Board that the settlement agreement did not require the agency to provide availability pay to Mr. Coker. We therefore affirm the Board's denial of his petition for enforcement.